**BURT v. LOCHAUSEN et al.**

No. 4820.

Court of Civil Appeals of Texas. El Paso.

July 20, 1951.

Rehearing Denied Oct. 31, 1951.

Andress, Lipscomb & Peticolas, El Paso, for appellant.

Kemp, Smith, Brown, Goggin & White, Jones, Hardie, Grambling & Howell, Burges, Scott, Rasberry & Hulse, El Paso, for appellees.

SUTTON, Justice.

This appeal is from the 41st District Court of El Paso County, in a death action.

Mary Elizabeth Burt, a feme sole, and the surviving wife of Richard Burt, de-

ceased, sued Jesse H. Lochausen, Jr., and The Life Insurance Company of Virginia, a corporation, to recover damages for the death of the deceased husband resulting from an automobile accident just west of the city limits on U. S. Highway 80–A in El Paso County March 6, 1950.

Lochausen was the owner and driver of the car when the accident occurred. Plaintiff sued Lochausen individually and joined the Insurance Company on the theory Lochausen was the agent of the Insurance Company and engaged in the course of his agency and employment at the time of the accident. Plaintiff charged in her petition the injuries and death of her husband were caused by the gross negligence, heedless and reckless disregard of the rights and safety of others on the part of Lochausen in the following particulars:

(a) That Lochausen drove and operated his car at a great, excessive and reckless rate of speed; (b) at a speed in excess of 60 miles per hour contrary to law; (c) that he overtook and passed a truck proceeding in the same direction on a left hand curve; (d) that he overtook and passed a truck proceeding in the same direction and drove to the left of the center of the highway at a time when the left side of the center was not free from traffic, etc., contrary to law; (e) that he so operated his car as to fail to keep and maintain same under a proper degree of control and management in driving said car off of said highway; (f) that he failed to keep the proper lookout for other persons and vehicles upon said curving highway, and pleaded all such claimed grounds of gross negligence as ordinary negligence.

The trial court in special issues submitted all the alleged grounds of negligence save (d) to the jury, upon each of which the jury returned favorable answers for plaintiff and in response to appropriate issues found each such claimed acts to be gross negligence and a proximate cause of the accident and injuries. Each of the defendants timely filed motions to disregard the verdict and render judgment in their favor notwithstanding the verdict. The Court heard the motions and arguments thereon and sustained them and rendered judgment that plaintiff take nothing, from which this appeal is prosecuted.

The motions were predicated on the grounds primarily the evidence establishes as a matter of law Burt was the guest of Lochausen at the time of the accident and that Lochausen was not guilty of gross negligence. Plaintiff's points on the appeal, save one, challenge these grounds and the action of the court in rendering the judgment in response to the motions. The issues thus presented are the controlling issues.

There is a considerable statement of facts and we have read it all but it will serve no purpose to set out the testimony in detail because the material facts may be easily stated briefly. Lochausen prior to March 6, 1950, had taken the application of Richard Burt for $25,000 insurance in the defendant Life Insurance Company. Burt lived about fourteen miles west of El Paso on his farm, and came in on the morning of March 6, 1950, to be examined for the insurance by the Company medical examiner. He first went to Lochausen's office and met Lochausen at the elevator. They went together to the doctor's office; Burt was examined, which examination was concluded about noontime. Lochausen and Burt went immediately to Juarez, Mexico, for lunch and refreshment. Burt had come to the City in his own car and his wife in hers. Mrs. Burt left her car at a motor company to be serviced and by prior arrangement was to meet her husband at the Popular Dry Goods Company store at 1 P. M. and return home with him in his car. While in Juarez Burt recalled his appointment with his wife and borrowed Lochausen's car and came to El Paso and met Mrs. Burt and told her he had a way to get home and she could go on in his car. Burt returned to Juarez.

At the conclusion of the Juarez lunch Lochausen and Burt made a trip down the El Paso Valley and later returned to Juarez about 4 P. M. where they remained until about 6:45 P. M. when they left for the Burt farm home in Lochausen's car. Lochausen testified Burt had asked him, during the lunch time in Juarez before Burt came to El Paso to meet Mrs. Burt.

to take him home later. There is testimony in the record Lochausen had said he was to meet Burt the next morning, March 7th, to collect the first premium, and also testimony from Lochausen he was through with the matter of insurance after the examination until the policy was returned by the Company for delivery, at which time the premium would be due under the then status of the matter, and at which time he would collect it. We regard it as immaterial whether the premium was to be collected on the morning of the 7th or on delivery of the policy.

The unfortunate and tragic accident in which Burt lost his life occurred about 7 P. M. March 6th, on Highway 80-A just west of the city limits. At the point where the accident occurred, and at all points in the immediate vicinity, the highway is a four-lane highway with a double stripe and buttons marking the center. Lochausen is quoted by one witness as saying he was driving 55 to 60 miles an hour and passed a large Mayflower moving van, cutting back sharply in front of the van to avoid oncoming traffic; that his steering locked and he was unable to control his car and it turned over, end over end. There is no other evidence there was oncoming traffic. There is testimony the car was being driven at an excessive rate of speed and it did pass the van as they were entering a broad left hand curve; that the car cut short in front of the van, regained its normal position, then left the pavement to the right, continuing off the pavement for 68½ feet; struck a guard rail, scraping it for 114 feet, then cutting across the highway to the left where it went on top of a levee between the highway and the Rio Grande, on top of which levee it overturned and came to rest on its top, the wheels in the air, having traversed a distance of 191 feet after quitting the guardrail to the point where it came to rest. The car made rather deep distinct tracks and marks on the highway shoulders and the dirt on the levee, and there is testimony to support the conclusion the brakes were applied from the time the car left the pavement until it came to rest. Lochausen testified he did all he could to control the car but was un-

able to do so. This, we believe, covers all the material testimony concerning the activities of Lochausen and Burt from the time they left the doctor's office after the physical examination to the time of the accident.

The first question therefore, to be determined from the pleadings and the evidence is whether or not Burt was a passenger or a guest within the meaning of our guest Statute, Art. 6701b, Vernon's Ann. Civ. St. and if the latter, then does the record support a finding of gross negligence? In support of the contention and claim of plaintiff, Burt was not a guest, and in support of the finding of the jury he was not, plaintiff says beyond any question the relationship existing between Lochausen and Burt was that of salesman and customer. Lochausen had known Burt for something like a year and had talked insurance to him on several occasions, had obtained the application on March 2nd, and had made the appointment for the examination for 11 A. M. the 6th. It may be conceded such relationship existed and would have continued had Burt lived so long as he had the policy and Lochausen remained with the Company, as a customer remains such with a business concern so long as he trades with it, but that does not necessarily mean the customer would not become the guest of the salesman when riding in the car of the salesman under some circumstances. It is said by plaintiff Burt was a prosperous farmer and had friends who were likely propects for insurance; that the sale of a policy to one customer many times leads to another; that Burt himself, as a prosperous farmer, was in all likelihood a prospect for further insurance; that as a part of Lochausen's agency as a salesman it was his business to service policies and maintain good relationships with policy holders and keep them satisfied, and that the opportunity afforded Lochausen after the examination was finished to take Burt to lunch, and down the valley in connection with Burt's interest in dusting crops with a helicopter, including the return of Burt to his home conferred upon Lochausen a distinct tangible benefit which removed Burt from the guest statute. The

rule established by the authorities everywhere seems to be, to remove a case from the provisions of such statutes a definite relationship must be established and a definite tangible benefit to the operator shown to have been the motivating influence for furnishing the transportation. The rule is firmly established in the decisions of this State, Raub v. Rowe, TexCiv. App., 119 S.W.2d 190 (e. r) ; Franzen v. Jason, Tex.Civ.App., 166 S.W.2d 727, (e. r.) ; Henry v. Henson, Tex.Civ.App., 174 S.W. 2d 270, (e. r.), and to which might be added many other cases. The benefits suggested by plaintiff are thought to be too uncertain, remote, and speculative to be definite and tangible. See Leete v. Griswold Post, American Legion, 114 Conn. 400, 158 A. 919 (and our statute is copied from the Connecticut statute).

■ Ordinarily the question of whether or not one is a guest or passenger within the meaning of the statute is a question of fact, because there is usually a dispute as to what the relationship is and the benefits conferred, but such is not the case here. The facts are undisputed. Had Lochausen undertaken to bring Burt to El Paso for the examination and return him to his home the situation would have been entirely different. Burt came of his own accord, furnishing his own transportation. The examination once completed, as it was, the business concerning the insurance was complete, except to collect the first premium and deliver the policy, and whether the premium was to be collected the following day, as suggested by plaintiff, or on delivery of the policy, the trip which resulted in the unfortunate, fatal accident had no connection with it.

It is our conclusion the trial court did not err in concluding as a matter of law Burt was a guest.

■ The next question to answer is, did the Court err in holding as a matter of law under the evidence Lochausen was not guilty of gross negligence? We think not. Plaintiff says Lochausen persisted in driving at an excessive rate of speed well over 70 miles an hour at night over a winding road with which he was familiar, having driven it many times, and in passing a van

truck on a left-hand curve. The material testimony has already been stated. Viewed in the most favorable light, as it must be, the testimony is, to repeat, Lochausen was driving on a four-lane highway, 51 feet in width, divided in the center by two stripes and buttons. Some 400 yards before he passed the van he passed a vehicle at an excessive rate of speed well over 70 miles an hour, and passed the van without slowing down just as it was entering a left-hand curve. There is no evidence of other traffic on the highway at the point. Lochausen cut back in front of the van, left the highway, scraped the guardrail, as has heretofore been detailed. He applied his brakes and cut deep marks in the shoulders and dirt. In other words, as we understand it, the gross negligence contended for is the driving at an excessive rate of speed and passing the van at such speed on or as entering a left-hand curve.

■■ It is pointed out in Bowman v. Puckett, 114 Tex. 125, 188 S.W.2d 571, loc. cit. p. 575, that high and excessive speed is mere ordinary negligence and not gross negligence; that there must be something of a continued or persistent course of action in order to constitute gross negligence. There is a total absence in the instant case of a course of continued or persistent course of action. The negligence claimed in Raub v. Rowe, supra, it seems to us, was of a grosser nature than that shown here and it was held not to be gross negligence. Likewise the negligence complained of and found in Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022, was as aggravated as here, and it was determined as a matter of law not to be gross negligence. We think what is said there, 134 S.W.2d at page 1025 (6), "Bearing in mind the relationship existing between the parties (Lochausen certainly had good reason to protect his customer and collect a nice commission and none to be conspicuously indifferent of his welfare) and all other surrounding circumstances, this evidence does not raise the issue that the defendant drove in reckless disregard of the rights of plaintiff or was consciously indifferent to her welfare", peculiarly applicable to the facts of this record.

The conclusions reached above make it unnecessary to discuss the other point presented on the exclusion of certain documentary evidence.

There are many cases cited and discussed in the briefs, but it would serve no purpose to discuss them here.

It is our opinion the judgment of the trial court is correct, and it is affirmed.

McGILL, Justice (dissenting).

I am unable to agree with the disposition of this case made by the majority. I do concur in the holding that the trial court did not err in concluding that as a matter of law Burt was a guest in Lochausen's car at the time of the accident. However, I think the evidence is sufficient to sustain the jury's findings that the operation of defendant's automobile at an excessive rate of speed and that defendant just prior to the accident drove and operated his automobile so as to overtake and pass a truck proceeding in the same direction as defendant on a left-hand curve in the highway was gross negligence and a proximate cause of the accident. In arriving at this conclusion it is necessary to consider the two findings together, since excessive speed alone has been said to be insufficient to constitute gross negligence, Bowman v. Puckett, 144 Tex. 125, 188 S.W.2d 571, 575; and the mere attempt to pass the van on a curve in the absence of speed necessarily could not include "something [in the nature] of a continued or persistent course of action" but when these two findings are considered together I think they meet all the requirements of a conscious indifference and of a continued or persistent course of action. A careful reading of the entire statement of facts warrants the inference that the defendant had been driving at a terrific rate of speed, up to 75 miles per hour, for some distance prior to his attempt to pass the Mayflower van. This van was of considerable length, consisting of a truck and a 38 foot trailer. He had passed the Wiggs Appliance truck at such speed about 400 yards before attempting to pass the Mayflower van. Defendant himself testified that he accelerated his speed in order to pass the Mayflower van.

The accident occurred about seven o'clock in the evening and the evidence shows it was dark at this time. The road on which defendant was traveling had one curve between the viaduct and the curve on which the accident occurred. This portion of the road passed through the city limits. The distance from the viaduct to the place of the accident was about a mile and a half. The road had been frequently traveled by the defendant and he knew that it was a heavily traveled road. There is some evidence that there was oncoming traffic at the time defendant attempted to pass the van. He cut so close in front of the van that the driver thereof took his foot off of the gas accelerator in order to slow down to keep from hitting defendant, and there is evidence that this driver also applied his brakes on the van. The evidence is ample to warrant an inference that nothing was wrong with the steering apparatus on defendant's car, and that it did not lock prior to the accident. The jury may properly have drawn the inference that due to the terrific speed defendant could not control his car so as to follow the paved curve of the highway. There is evidence that he did straighten out his car after cutting in front of the van. The jury could reasonably infer that due to his terrific speed and his cutting in in front of the van he could not control his car. The curve was from 30 to 45 degrees. The distance defendant's car traveled over the pavement until it hit the guard rail, i. e., 68½ feet; the distance along the guard rail, scraping it for 114 feet, and the distance from the guard rail across the highway, through the oleander bush until it came to rest on top of the river levee, 191 feet, the position of the car, being on its top when it came to rest, and the deep furrow cut by the right wheels of the car in the shoulder of the highway attest the terrific force of the car.

That the law of this State is in a state of confusion as to what facts and circumstances will support a finding of gross negligence so as to warrant recovery under our guest statute is ably demonstrated by the dissenting opinion of Mr. Justice Garwood in Rogers v. Blake, Tex., 240 S.W.2d 1001. In my opinion the guest statute was never

intended as a panacea for negligent conduct which the man of ordinary prudence and judgment, with due regard for the safety of the guest, must necessarily regard as reckless and heedless. Unless there can be no recovery by a guest except for intentional injury, then it seems to me the facts of this case clearly take it out of the realm of ordinary negligence and place it in the category of reckless or heedless conduct. Certainly such conduct would be so regarded by the man of ordinary prudence and judgment having a due regard for the safety of the guest.

I believe there is no evidence to support the answer of the jury to Question No. 20, which found in effect that in undertaking to return Burt to his home in the Upper Valley Lochausen was acting in the scope of his employment. Therefore, it is my view that the judgment of the trial court, insofar as it decreed that plaintiff take nothing against the Life Insurance Company of Virginia, should be affirmed, and that in all other respects it should be reversed, and since appellee Lochausen in his brief has presented no prejudicial error committed against him over his objection on the trial, it is our duty to render the judgment on the verdict that the trial court should have rendered, against defendant Lochausen. Rule 324, Rules of Civil Procedure. City of Houston v. Lurie, Tex., 224 S.W.2d 871, 14 A.L.R.2d 61; LeMaster v. Fort Worth Transit Co., 138 Tex. 512, 518, 160 S.W.2d 224.