**Dorothy R. MILLS, Plaintiff,**

v.

**Helmut HOFLICH, Defendant.**

**No. 70–453.**

United States District Court,
W. D. Oklahoma,
Civil Division.

April 23, 1971.

Judson S. Woodruff, Peter B. Bradford, Ray G. Moss, Oklahoma City, Okl., for plaintiff.

Kenneth N. McKinney, Oklahoma City, Okl., for defendant.

## ORDER

DAUGHERTY, District Judge.

Defendant has moved for summary judgment on the grounds that Plaintiff's action is governed by Texas laws, where the accident occurred, and that her action is barred by the Texas "Guest Statute", Vernon's Ann.Civ.St.Tex. art. 6701b.[1] Plaintiff argues that whether she was a guest within the meaning of this statute is a question of fact not determinable on Defendant's Motion and further that such statute is not the law applicable to this case.

██ Whether the question of fact alluded to by Plaintiff is present depends on the law of the case. The Oklahoma conflicts rule in tort cases requires the application of the law of the place of the accident. Cherokee Laboratories, Inc. v. Rogers, 398 P.2d 520 (Okl.1965). The great weight of authority in the United States follows this rule. See Annotation, Choice of Law in Application of Automobile Guest Statutes, 95 A.L.R. 2d 12–50. In the present case, the accident occurred in or near Lubbock, Texas. All the elements of negligence relied on by Plaintiff to support her cause of action against Defendant occurred there. Plaintiff contends that this Court should apply the "significant contacts" rule to this pure tort case and argues that depriving her of a cause of action through the laws of another state whose only contact with her case was the fortuitous event of the accident is against Oklahoma's public policy, reasoning that as Oklahoma does not have a guest statute, it does not favor denial of this type of action. However, Oklahoma's public policy with respect to wrongful death actions was not considered so strong as to require abandonment of the traditional conflicts rule. The Oklahoma Court stated in Cherokee Laboratories, Inc. v. Rogers, *supra*:

"Under the facts of the present case we are not called upon to indicate what our decision would be if the proof had shown specifically that some of the elements of negligence relied upon by plaintiff had occurred in Oklahoma.

In the absence of such proof, we decline to hold with the view that the public policy of this State pursuant to the theory of Section 7 of Article XXIII of our Constitution is such or so strong as to require a determination that the Missouri statutory limit of $25,000.00, recovery in a wrongful death action does not apply in a suit brought in Oklahoma." 298 P.2d at page 525.

Oklahoma's public policy with respect to wrongful death actions is clearly expressed in its Constitution,[2] while its

---

1. This statute provides:
   "No person transported over the public highways of this state by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heed-

lessness or his reckless disregard of the rights of others."

2. Section 7 of Article XXIII of Oklahoma's Constitution provides:
   "The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount shall not be subject to any statutory limitation * * * *"

policy with respect to the guest statutes in force in many other states is one of mere silence. Thus, there is even less reason to give any consideration to this factor in this case.

Moreover, the Texas and New Mexico guest statutes have been applied by the Oklahoma courts, although the conflicts rule was not drawn into question. Disney v. Cook, 457 P.2d 552 (Okl.1969); Derryberry v. Derryberry, 358 P.2d 819 (Okl.1961).

■ Plaintiff also urges that a provision of Oklahoma's Uniform Commercial Code, 12A Okl.St.Ann. § 1–105(1), manifests that Oklahoma has adopted the significant contacts rule.[3] It is obvious from the most cursory examination of that statute that its application is limited to contract law and is inapplicable to tort law.

■ Plaintiff further urges that this Court has adopted the significant contacts rule, citing Judge Eubanks' opinion in Williams v. Texas Kenworth Company, 307 F.Supp. 748 (Okl.1969). However, in that case the action was in part founded on breach of warranty and in distinguishing the *Cherokee Laboratories* case from the case before him, Judge Eubanks recognized the very clear distinction between tort and contract in the application of the significant contacts rule:

"The complaints herein, however, allege breaches by the defendants of the respective warranties on the truck, wheel and tire. The specifics as to each are spelled out in the complaints. There were not comparable allegations in Gochenour [Gochenour v. St. Louis-San Francisco Ry. Co., [205 Okl. 594] 239 P.2d 769 (Okl.1952) and Cherokee Laboratories, supra. An action for breach of a seller's warranty is a curious hybrid of tort and contract, unique in the law. And the breach of an implied warranty by a seller is a wrongful act." 307 F.Supp. at page 751.

Plaintiff here makes no claim not founded wholly and exclusively in tort. The Court is compelled to follow the state law as it finds it, and the state law requires application of the Texas Guest Statute.[4]

Having concluded that the Texas Guest Statute applies herein, it is necessary to determine if there is a genuine, material issue of fact with respect to Plaintiff's status under the Guest Statute. Plaintiff states by affidavit and deposition that the purpose of the trip on which she was injured was for the mutual enjoyment and pleasure of herself and the Defendant. The only contribution towards the expense of the trip by her was some sandwiches. The Defendant provided the car, gasoline and did the driving. These facts are not disputed.[5]

■ It appears to the Court that the benefit expected from the trip is not the

---

3. This statute provides:
   " * * * When a *transaction* bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this Act applies to *transactions* bearing an appropriate relation to this state." (Emphasis added).

4. In reviewing the cases dealing with the *lex loci delictus* and significant contacts rules, the Sixth Circuit, with respect to cases adopting the latter rule, observed:
   "It is to be noted that all of these cases except Pearson [Pearson v. Northeast Airlines, Inc., 309 F.2d 553

(Second Cir. 1962)] were decided by state courts. *No federal court deviated from the rule of conflict of laws adopted by the state in which it sat.* In Pearson, supra, the Second Circuit followed the New York court in Kilberg [Kilberg v. Northeast Airlines, Inc., 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (N.Y. App.1961)].
   "In a recent case, the Supreme Court of Oklahoma declined to follow the lead of New York in Kilberg. * * * Cherokee Laboratories, Inc. v. Rogers, * * * " Goranson v. Capital Airlines, Inc., 345 F.2d 750 at page 752. (Emphasis supplied.)

5. Plaintiff states in her affidavit:
   "The trip to El Paso * * * was indeed planned to be enjoyable to both

kind of "definite tangible benefit" which Texas law requires in order to remove Plaintiff from the operation of the Texas Guest Statute. In fact, Plaintiff's testimony on deposition is quite clear that the purpose of their trip was pleasure only.[6] A much stronger case was presented in Burt v. Lochausen, 244 S.W. 2d 915 (Tex.Civ.App.1951), yet the passenger was held to be a guest and within the operation of the statute as a matter of law.

None of the evidence on which the parties rely in support of or in opposition to Defendant's Motion for Summary Judgment is in dispute. Such evidence according to Burt v. Lochausen, *supra,* does not remove Plaintiff from the operation of the Guest Statute. Whatever benefit she was to receive from the trip was not that described by the *Lochausen* case as a "definite tangible benefit." Thus the Court concludes that as a matter of law upon considering Plaintiff's own affidavit and own deposition as above quoted she was a guest in Defendant's car.

The language of the Texas "Guest Statute", *supra,* " * * * unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others." has been equated with gross negligence. Burt v. Lochausen, *supra.* Plaintiff makes no claim that the accident was in-

tentionally brought about by the Defendant. And on page 3 of Plaintiff's brief now under consideration Plaintiff says, "plaintiff does not complain that defendant was guilty of gross or wilful negligence in causing the collision resulting in plaintiff's injuries."

Defendant's Motion for Summary Judgment is granted as there is present no genuine issue as to any material fact. Defendant's counsel is requested to submit to the Court a judgment in accordance with this opinion within fifteen (15) days of the date hereof.

Mr. Hoflich and me but there were several other reasons for the trip. First, Mr. Hoflich was eager to visit El Paso because he had anticipated leaving there for his return trip to German[y]. It was helpful to Mr. Hoflich to have me along to explain English language questions and American customs, and I don't believe Mr. Hoflich would have gone on the trip without my being along. In addition, we both would have been able to speak English and German on the trip and with some German friends of his in El Paso. I furnished food and snacks * * * "

6. "Q. Was there any other reason for your being along, other than just for the ride?
A. It was just a pleasure trip, before he returned.

Q. And it was understood, as such, by you as well as by him when you left, that it was a pleasure trip?
A. We were just going there to see the friends and come back.
Q. Yes, ma'am.
So, do I understand that it had nothing to do with your occupation as a teacher in any way?
A. No. I would say it had nothing to do with my occupation as a teacher.
Q. Or was Mr. Holflich planning to do any work, or did it have any business function, as far as he was concerned, to your knowledge?
A. No."
Plaintiff's deposition, page 63.